**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Hon. J. Curtis Joyner** |
| **v.** | : | **Crim. No. 08-cr-161** |
| **GLORIOUS SHAVERS,** | : | |
| a/k/a "G," | | |
| a/k/a "G-Bucks," | : | |
| **ANDREW WHITE,** | | |
| a/k/a "Darnell White," | : | |
| a/k/a "F," | | |
| a/k/a "Mikey F" | : | |

**O R D E R**

AND NOW, this      day of      , 2008, upon consideration of the
government's motion to admit the recordings of conversations between the defendant and other
individuals, on various dates between November, 2005 through October, 2006, the Court finds
the following as to the recordings and accompanying transcripts:

1.  The recording devices used were capable of recording accurately the
conversations;

2.  The operator of the recording device was competent;

3.  The recording is authentic and correct;

4.  There have been no changes in, additions to, or deletions from the recordings;

5.  The recording has been properly preserved;

6.  The speakers on the recordings, the charged defendants, are properly identified,
as reflected in the transcripts;

7.  The recording of the conversations by officials of the Philadelphia Prison

System was not within the meaning of "interception" under Title 18, U.S.C. Section

2510(5)(a)(ii) (the Federal Wiretap Act) and/or the defendant consented to the recording of the

conversations; and

        8.  The transcript of the recording accurately represent the conversation on the

recording and accurately identify the charged defendants as a party to the recorded conversations.


BY THE COURT:


_____

HONORABLE J. CURTIS JOYNER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. J. Curtis Joyner |
| v. | : | Crim. No. 08-cr-161 |
| GLORIOUS SHAVERS, | : | |
| a/k/a "G," | | |
| a/k/a "G-Bucks," | : | |
| ANDREW WHITE, | | |
| a/k/a "Darnell White," | : | |
| a/k/a "F," | | |
| a/k/a "Mikey F" | : | |

## GOVERNMENT'S MOTION TO ADMIT PHONE CALL RECORDINGS

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Mary A. Futcher, Assistant United States Attorney for the District, hereby moves for the admission at trial of phone call recordings pursuant to Fed. R. Evid. 104 and 901 (authentication), and in support of this motion states as follows:

1. Defendants Glorious Shavers and Andrew White are charged in a three-count indictment with violating Title 18, United States Code, Sections 1951(a)(interference with commerce by robbery) and 924(c)(use and carrying of a firearm during a crime of violence).

2. The government anticipates that the evidence will show as follows. The residence located on North 8th Street, Philadelphia, PA operated as an after hours "speakeasy" where people went to drink alcoholic beverages after bars and night clubs in Philadelphia had closed. The "speakeasy" sold beer, wine, and mixed drinks. Customers were checked by a

security person who patted them down for weapons as they entered the front door.  They could then order alcohol from a bartender who worked behind a bar in the basement and play cards, dance to music, or play video games.  The alcohol served to customers, including Corona, Budweiser, and Coors Lite, was purchased by the owner of the residence from local beer distributors in Philadelphia after it had been transported into Pennsylvania from other states or other countries.

      3.   On November 8, 2005, at approximately 5:30 am, three males entered the speakeasy with firearms.  They entered through the front door pushing past the doorman.  They announced they were committing a robbery, brandished firearms, including a handgun and a double barrel shotgun (described by one witness as a sawed-off shotgun), and ordered the patrons to the floor where they searched their pockets and stole cash and cell phones.  One person was able to make a 911 call.  When the three males fled the speakeasy, they were met by Philadelphia Police officers.  The three males ran.  Defendant Glorious Shavers was arrested within minutes in the area of 3000 North 9th Street, approximately one block west of the residence.  Arresting officers identified Shavers as one of the males they had observed moments earlier walking out of the residence carrying a long object in his hands.  Three live shotgun shells and two packets containing an off-white chunky substance were found in his pocket.  The shotgun was not located.  Robbery victims also identified Shavers as one of the robbers.  The third robber escaped from the scene of the robbery.

      4.   Defendant Andrew White was arrested within minutes in the area of Indiana and Franklin Streets, one block south and a half-block east of the residence after he had thrown a handgun to the ground.  Recovered from White were two cell phones, both belonging to the

2

robbery victims.  Arresting officers identified White as one of the males they observed moments earlier walking out of the residence before he ran south on 8th Street.  The handgun was a silver, .38 Smith and Wesson revolver loaded with 4 live rounds.  Robbery victims also identified White as one of the robbers.

       5.  The defendants were arrested on robbery and firearms charges locally, and were "held for court" after a preliminary hearing at the Philadelphia Criminal Justice Center. While awaiting trial on local charges, the defendants were indicted by the federal grand jury on or about March 20, 2008.  While facing their local charges, the defendants were held at the "CFCF" prison facility on State Road, Philadelphia, Pa.   The defendants remained in local custody there from the time of their arrest in November 2005 until March 2008, when they were transferred to the FDC to face federal charges.

       6.  During the course of this case, the government obtained recordings of numerous telephone conversations made by the defendants from the "CFCF" prison to other individuals.  These phone call recordings were made by the Philadelphia Prison System, where the defendants were held on state robbery charges prior to their federal indictment on March 20, 2008. CFCF maintains a system of recording all phone conversations made by prisoners.   These calls are digitally maintained in the telephone system maintained by the prison.  Prisoners are provided a unique "PIN" number that they must input into the telephone prior to engaging in conversations by phone in order to commence a call.   This "PIN" number consists of their unique Philadelphia Photo Number followed by a three-digit password created by the prisoner. Prisoners are advised in the prison handbook that "Telephone Calls are Subject to Monitoring," and at each phone a placard warns prisoners to "Please note your call may be recorded or

monitored." Moreover, at regular minute intervals during the phone conversations, a recording interrupts the conversation advising the parties that "This call may be monitored and recorded at any time."

4.   The government has reviewed the content of these calls and submits that many of them are relevant to proving the charges in the indictment.   In particular, by the defendants' own admissions, the calls establish the identity of the defendants as the speaker in the calls and the defendants were the individuals who entered the speakeasy on November 8, 2005.

5.   The government seeks to admit portions of these telephone conversations. Several of the phone conversations are relevant in establishing the identity of the male speaker in the conversation as the defendants.   These conversations evidence the defendants' detailed knowledge of their criminal case, the court listing dates, and the defendants' attempts to recruit individuals to "holler" at the victims so that the victims would fail to appear and the case would be discharged.   Many of the calls identify the defendants as the speakers in the calls.

6.   The calls also contain the defendants' admissions that they were the individuals who entered the speakeasy on November 8, 2005.   These calls are relevant in identifying the defendants as the robbers of the speakeasy and their use of firearms.

7.   Notably, in all of the recordings, the defendants never complained that they were never inside the speakeasy that night.   Rather, in a series of calls in November 2005, the defendants repeatedly discussed their involvement in the robbery and offered their thoughts on what they believe are the weaknesses in the robbery case.  In so doing, the defendants admit that he was present at the speakeasy, and thereby inculpates themselves in the robbery and possessing the firearms, including the firearm that was recovered by the Philadelphia police officers after

4

White discarded it during their flight from the speakeasy.

8. Copies of draft transcripts and the conversations in the possession of the government were provided to defense counsel in discovery. The government is preparing a final draft, with the identity of the speakers, for use at trial. The government will then request defense counsel to inform the government of any disagreements with the government's transcription of the recorded conversations and the government's identification of the defendants as the speakers.

9. The government avers that these recordings are authentic within the meaning of Rule 901, Fed. R. Evidence, and at a pre-trial hearing (if the court desires, under Rule 104) or at trial, it will offer the testimony of the individual(s) at the Philadelphia Prison System responsible for the maintenance of the prison call monitoring system and a United States Postal Inspector and/or FBI Special Agent to make the showing of authenticity.

10. Although, for the reasons set forth in the attached memorandum, the government does not believe that it is necessary, the government avers that and asks the Court to make a finding that:

a. The recording devices used were capable of recording accurately the conversations;

b. The operator of the recording device was competent;

c. The recording is authentic and correct;

d. There have been no changes in, additions to, or deletions from the recordings;

e. The recording has been properly preserved;

f. The speaker on the recordings, the charged defendants, are properly

5

identified, as reflected in the transcripts;

g.  The recording of the conversations by officials of the Philadelphia Prison System was not within the meaning of "interception" under Title 18, U.S.C. Section 2510(5)(a)(ii) (the Federal Wiretap Act) and/or the defendant consented to the recording of the conversations; and

11.  The transcript of the recording accurately represent the conversation on the recording and accurately identify the defendant as a party to the recorded conversations.

Wherefore, upon the agreement of counsel, or after a hearing ordered by the Court, the government respectfully requests that this Court issue the attached order.

Respectfully yours,

PATRICK L. MEEHAN
*United States Attorney*

_____
Mary A. Futcher
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Hon. J. Curtis Joyner** |
| **v.** | : | **Crim. No. 08 -cr-161** |
| **GLORIOUS SHAVERS,** | : | |
| **a/k/a "G,"** | | |
| **a/k/a "G-Bucks,"** | : | |
| **ANDREW WHITE,** | | |
| **a/k/a "Darnell White,"** | : | |
| **a/k/a "F,"** | | |
| **a/k/a "Mikey F"** | : | |

**<u>MEMORANDUM OF LAW</u>**

_____The government moves under Rules 104 and 901 of the Federal Rules of Evidence for a finding on the authentication of the tape recordings who transcripts are attached.  Rule 901(a), Fed. R. Evid., provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"All that is required is a foundation from which the fact finder could legitimately infer that the evidence is what its proponent claims it to be."  <u>In re: Japanese Electronic Products</u>, 723 F.2d 238, 285 (3d Cir. 1983), <u>rev'd on other grounds</u>, <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation</u>, 475 U.S. 574 (1986).  This is a prima facie showing only and the evidence form which this finding is made must itself be admissible (in contrast to rulings under Rule 104(a)).  As the Third Circuit  Court of Appeals has noted, "The burden of proof for authentication is slight."  <u>McQueeney v. Wilmington Trust Co.</u>, 779 F.2d 916, 928 (3d Cir.

1985).  Once a prima facie showing has been made, if authenticity is disputed, the dispute is to be resolved by the jury.  United States v. Goichman, 547 F.2d 778, 784 (3d Cir. 1976); United States v. McGlory, 968 F.2d 309, 328-29 (3d Cir. 1992); United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994).  Authenticity is a question separate from admissibility.  Once the court has determined that a party has made a prima facie showing that the evidence is authentic, it must then determine if the evidence is admissible--e.g., is it relevant?  Japanese Electronics, 723 F.2d at 285-87; In re Fine Paper Litigation, 751 F.2d 562, 586 (3d Cir. 1984).

Rule 901 provides "illustrations" of a few examples of such authentication.   Rule 901(b) states that "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

> Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Fed. R. Evid. 901(b)(5).

> Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called...

Fed. R. Evid. 901(b)(6).

The government submits that evidence from a Philadelphia Prison System official of how the phone call recordings are collected and maintained and how an inmate uses his unique "PIN" (unique Philadelphia photo number) to place a call and the content of the conversations n establishes, for purposes of Rule 901, that the callers in these conversations are the defendants.

The government submits that the requirements of United States v. Starks, 515

2

F.2d 112, 121, n. 11 (3d Cir. 1975), are inconsistent with the Rules of Evidence which came into

force a few months after the <u>Starks</u> decision.  The government is prepared to meet the <u>Starks</u>

requirements at a hearing for that purpose; however, because the Federal Rules of Evidence were

adopted after <u>Starks</u>, and because the law of authentication under the Rules is inconsistent with

<u>Starks</u>, the government submits that <u>Starks</u> is no longer the law.[1]   Moreover, to the extent that

<u>Starks</u> suggests that a particular formulation must be followed to establish authenticity of tape

records, it is not valid.

        To be sure, in some cases the factors listed in <u>Starks</u> may remain relevant to the

preliminary determination.  This is particularly so in a case in which the participants to the

conversation are not available, and the government must establish the identity of the persons on

the recording and the absence of any malfunction or alteration.  See Rule 901(b)(9) (evidence

may be authenticated by proof "describing a process or system used to produce a result and

showing that the process or system produces an accurate result").

        The government notes the phone conversations, as recorded by the Philadelphia

Prison System as part of their routine monitoring of such calls, are exempt from the definition of

"intercept" for purposes of the Federal Wiretap Act, Title 18, U.S.C., Section 2510 et seq.

Section 2510(4) defines "intercept' to mean the aural or other acquisition of the contents of any

wire, electronic, or oral communication through the use of any electronic, mechanical, or other

---

[1] Starks' requirement of a showing of "clear and convincing evidence' is no longer good law with respect to the preliminary finding under Rule 901 to be made by the trial court.  The burden presently imposed by Rule 901 is the same as that applicable to factual determinations made by a judge prior to permitting the admission of evidence, under Rule 104.  Thus, the Starks rule actually (and inappropriately) imposes a higher burden for admission of recordings than currently applies for admission of any other type of evidence.

device.  Section 2510(5) defines such an "electronic, mechanical, or other device" to mean any device or apparatus which can be used to intercept such communications other than (a) any telephone...equipment or facility (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties."   In United States v. Lewis, 406 F.3d 11 (1st Cir. 2005), the Court of Appeals stated that recordings made pursuant to routine prison practice of monitoring all outgoing inmate telephone calls under a policy of which inmates were informed did not constitute "interception" within the meaning of the Federal Wiretap Act, 18 U.S.C, Section 2510(5)(a)(ii); see also United Sates v. Vasta, 649 F. Supp. 974 (S.D.N.Y. 1986); United States v. Clark, 651 F. Supp 76 (M.D. Pa. 1986).

Even if the recordings are subject to the Federal Wiretap Act, the defendants impliedly consented to monitoring and recording in light of their use of the prison phone after having notification of  monitoring/recording through various sources.   Here, the prison handbook distributed to prisoners indicates that phone calls may be monitored.  The placard placed by the telephone at the prison advises the same.  Moreover, during the calls the parties are warned that conversations may be monitored or recorded.  Various courts have held that use of prison phones under such circumstances is deemed to constitute implied consent.  See, e.g., United States v. Amen, 831 F.2d 373 (2d Cir. 1987); United States v. Peoples, 71 F. Supp.2d 967 (W.D. Mo. 1999); People v. Windham, 50 Cal. Rptr. 3d 768 (1st Dist. 2006).

In this case, as set forth in the accompanying motion, all of the factors outlined in

Starks are met in this case and the recordings of the conversations should be admitted at trial.

Respectfully yours,

PATRICK L. MEEHAN
*United States Attorney*


_____
Mary A. Futcher
Assistant United States Attorney

5

## <u>CERTIFICATE OF SERVICE</u>

I certify that, by electronic filing, I have served or caused to be served a copy of the

foregoing upon:


Bernard L. Siegel, Esquire
1515 Market Street
Suite 1915
Philadelphia, PA

Benjamin Cooper, Assistant Federal Defender
Federal Public Defender Association
840 Hamilton Street, Suite 310
Allentown, PA 18101




_____
MARY A. FUTCHER
Assistant United States Attorney



Dated: June 19, 2008

6